**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)
**WASSERMAN, JURISTA & STOLZ, P.C.**
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Phone: (973) 467-2700
Fax: (973) 467-8126
*Proposed Counsel to Debtor-in-Possession*
**DANIEL M. STOLZ, ESQ.**
**DONALD W. CLARKE , ESQ.**

In Re:

**VIDEO CORPORATION OF AMERICA**

Debtor.

Case No.: 20-11768-CMG

Judge: Christine M. Gravelle

Chapter: 11

**DEBTOR'S MOTION FOR THE ENTRY OF INTERIM ORDERS
OF THE BANKRUPTCY CODE AUTHORIZING THE USE OF CASH
COLLATERAL, GRANTING ADEQUATE PROTECTION, AUTHORIZING THE
DEBTOR TO OBTAIN POSTPETITION SECURED CREDIT, GRANTING RELATED
RELIEF, AND SCHEDULING A SECOND INTERIM HEARING**

TO:   HONORABLE CHRISTINE M. GRAVELLE
      UNITED STATES BANKRUPTCY JUDGE
      FOR THE DISTRICT OF NEW JERSEY

Video Corporation of America (hereinafter, the "Debtor" or "VCA") by and through its proposed undersigned Counsel, hereby submits this Motion (the "Motion") for entry of an interim order (the "Interim Cash Collateral Order"), substantially in the form attached hereto, as **Exhibit "A,"** and after a second hearing on the Motion (the "Second Interim Hearing"), the entry of a second interim order (the "Second Interim Cash Collateral Order"), (a) authorizing the Debtor to use cash collateral, (b) granting adequate protection to the Bank with respect to such use of cash collateral and any diminution in value of the Bank's interests in the pre-petition collateral, (c) authorizing the Debtor to obtain secured credit from York Telecom Corporation ("Yorktel") pursuant to the *Master Purchase, Services and Security Agreement* (the "Purchase Agreement"), (d) prescribing the form and manner of notice setting the time for the Second

Interim Hearing, and (e) granting certain related relief. In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory basis and legal predicates for the relief sought herein are 11 U.S.C. §§105(a), 361, 362, 363, and 364, Rules 2002, 4001, 6003 and 9014 of the Federal Rule of Bankruptcy Procedure, and D.N.J. LBR 4001-3.

## GENERAL BACKGROUND

3. For general background detail, the Debtor references the *Certification of David Berlin in Support of First Day Motions* (the "Berlin Certification"), filed contemporaneously herewith.

## FINANCING FACILITIES AND CREDIT AGREEMENTS

### The Wells Fargo Credit Facilities

4. The Debtor and the Bank entered into a certain credit agreement (said agreement, and as amended, the "Credit Agreement"; all documents executed in connection with the Credit Agreement, the "Loan Documents"), dated as of September 18, 2013, as amended by Amendment No. 1 to Loan Documents dated October 31, 2014, Amendment No. 2 to Loan Documents dated November 1, 2015, Amendment No.3 to Loan Documents dated November 1, 2016, Amendment No.4 to Loan Documents dated February 1, 2017, Amendment No.5 to Loan Documents dated February 1, 2018, Amendment No. 6 to Loan Documents dated September 1, 2018, Amendment No. 7 to Loan Documents dated October 1, 2018, and Amendment No. 8 to Loan Documents dated June 1, 2019 relating to certain indebtedness as evidenced by that certain

revolving line of credit note, dated September 18, 2013, in the original principal amount of up to $10,000,000.00 (currently in the maximum principal amount of up to $8,000,000) (the "Line of Credit Note") and as evidenced by that certain amended and restated term note dated October 1, 2018, in the original principal amount of $836,917.62 (the "Term Note" and, together with the Line of Credit Note, the "Notes").

5. The principal balance outstanding as of this filing (or shortly before) (i) under the Line of Credit Note was $3,355,815.52, and (ii) under the Term Note was $627,687.76.

6. The Notes have been secured by, among other things, that certain Mortgage and Assignment of Leases and Rents dated as of September 12, 2008 made by Debtor's principal and Guarantor, Albert J. Berlin, in favor of Bank and recorded in the Office of the Somerset County Clerk on September 17, 2008 in Book 6163, Page 990, encumbering the Mortgaged Premises (as that term is defined in the Mortgage), as modified by (i) an instrument of modification dated August 3, 2009, and entitled "First Mortgage Modification- July 2009", and recorded on August 24, 2009 in the Office of the Somerset County Clerk in Book 6256, Page 2202, (ii) the Second Modification of Mortgage and Assignment of Rents and Leases dated May 25, 2011 and recorded on March 19, 2018 in the Office of the Somerset County Clerk in Book 7030, Page 2164 et seq., (iii) the Modification of Mortgage and Assignment of Rents and Leases dated September 18, 2013 and recorded on September 30, 2013 in the Office of the Somerset County Clerk in Book 6674, Page 195 et seq. *(which should have been titled "Third Modification of Mortgage and Assignment of Leases and Rents")* and (iv) the Fourth Modification of Mortgage and Assignment of Rents and Leases dated October 1, 2018 and recorded on December 5, 2018 in the Office of the Somerset County Clerk in Book 7087, Page 743 et. seq. (collectively, the "2008 Mortgage"). The Notes have been further secured by that certain Mortgage and Assignment of Rents and Leases against the Mortgaged Premises, said mortgage being (a) dated

as of September 18, 2013, (b) entitled "Mortgage and Assignment of Rents and Leases" and (c) recorded on September 30, 2013, in the Office of the Somerset County Clerk in Book 6674, Page 219 et seq. (the "2013 Mortgage", and together with the 2008 Mortgage, the "Mortgage").

7. The Notes have been further secured by that certain Security Agreement dated as of September 18, 2013 made by Debtor in favor of the Bank ("Security Agreement").

8. The Notes have been guaranteed by each Guarantor pursuant to that certain Continuing Guaranty dated September 18, 2013 (limited to the extent set forth therein), executed by Albert J. Berlin in favor of the Bank, and that certain Continuing Guaranty dated September 18, 2013, executed by David Berlin in favor of the Bank (together, the "Guarantees"; the Guarantees, Notes, Mortgages, and Security Agreement, "Loan Documents" attached as **Exhibit "B."**

9. In addition to the creditor facilities detailed above, the Bank services certain commercial credit card accounts (the "Credit Card Accounts"). **Exhibit "C."**

10. The Credit Card Accounts are current.

### The Wells Fargo Forbearance Agreements

11. As a result of the Debtor having defaulted under the Loan Documents, the Bank and the Debtor entered into a forbearance agreement, dated December 23, 2019 (the "2019 Forbearance Agreement"). **Exhibit "D."**

12. Pursuant to the Forbearance Agreement, the Bank agrees to forbear from exercising its remedies with regard to the Notes until the Forbearance Termination Date (as defined in the Forbearance Agreement, or agreements further extending same).

13. In anticipation of the Debtor's voluntary chapter 11 petition in bankruptcy and proposed sale to York-VCA, LLC ("York-VCA"), the Bank and the Debtor entered into an

amendment to the 2019 Forbearance Agreement (the "Amended Forbearance Agreement"). **Exhibit "E."**

14. The Amended Forbearance Agreement makes certain, including: (i) the term of the agreement; and (ii) the parameters for the advancement of credit under the (a) Line of Credit and (b) commercial card services ("p-card services").

15. Pursuant to the Amended Forbearance Agreement, the Debtor shall continue to comply with all other terms of the Loan Documents not specifically addressed in the 2019 Forbearance Agreement or Amended Forbearance Agreement.

### *The Purchase Agreement Between VCA and Yorktel*

16. As a result of operating losses suffered by the Debtor, and detailed in the Berlin Certification, the Debtor has insufficient cash on hand to purchase equipment and/or vendor services necessary to undertake new jobs.

17. The Debtor and Yorktel have negotiated the Purchase Agreement (**Exhibit "F"**) to coordinate Yorktel's (i) purchase of equipment, (ii) purchase of vendor services, and (iii) funding of payroll for the Debtor's employees necessary to service the new jobs.

18. Pursuant to the Purchase Agreement, and as set forth in more detail therein, the Debtor shall pay a fee of ten (10) percent of the net profits to Yorktel for extending credit to the Debtor, and Yorktel will receive a first priority lien on the equipment purchased, as well as on any receivables generated.

### *The Intercreditor Agreement Between Yorktel and Wells Fargo*

19. In light of the existing credit facilities between Wells Fargo and the Debtor, Wells Fargo and Yorktel have entered into, and the Debtor has acknowledged, the *Intercreditor and Subordination Agreement* (the "Intercreditor Agreement"). **Exhibit "G."**

20. Pursuant to the Intercreditor Agreement, and as detailed therein, Wells Fargo will take a subordinated secured interest in the equipment and/or receivables secured by Yorktel under the Purchase Agreement with the Debtor, but will retain its priority status on all other collateral pursuant to the Amended Forbearance Agreement.

**PROPOSED USE OF CASH COLLATERAL AND ADEQUATE PROTECTION**

21. The Debtor proposes to continue operating until its assets and operations can be sold pursuant to the terms of the Interim Cash Collateral Orders to be entered, which proposed order accompanies this Motion.

22. Attached as **Exhibit "H"** is a six (6) week cash flow analysis prepared by the Debtor's professionals and approved by the Bank (the "Budget").

23. The Bank has consented to the Debtor's limited continued use of its cash collateral, including use of the (i) Line of Credit Notes, and (ii) Credit Card Accounts. Those limitations are more fully detailed in the Amended Forbearance Agreement, attached hereto as *Exhibit "E,"* and the Security Agreement concerning the p-card services, attached as **Exhibit "I."**

24. During the period of the Debtor's use of cash collateral, the Debtor shall: (a) continue all reporting as required under the Loan Documents and Forbearance Agreement; and (b) continue payment to the Bank, as modified by the relief set forth in the Cash Collateral Order to be entered.

25. The Debtor proposes to grant the Bank a replacement lien on all post-petition assets, including Debtor's receivables, subject to the Intercreditor Agreement, to further secure the obligations of the Debtor to the Bank, and to provide further adequate protection to the Bank for the use of its cash collateral.

**PROPOSED USE OF SECURED CREDIT UNDER THE PURCHASE AGREEMENT**

26. As of this filing, there are five (5) potential purchase orders (the "Purchase Orders") for which the Debtor will require Yorktel's extension of credit through the Purchase Agreement.

27. Should the Debtor fill each of these Purchase Orders, they will require an extension of approximately $_____ from Yorktel.

28. For any other prospective purchases, the Debtor, in consultation with Yorktel, and on notice to the Bank, will determine which additional purchases shall be made.

**RELIEF REQUESTED AND BASIS THEREFOR**

*Cash Collateral and Adequate Assurance*

29. The Debtor requests authorization to use cash collateral to meet the ordinary cash needs of the Debtor for the payment of actual expenses of the Debtor necessary to (a) maintain and preserve the assets, and (b) continue operation of its business for the purpose of liquidating assets and collecting receivables.

30. The Bankruptcy Code provides chapter 11 debtors-in-possession with the right to use cash collateral upon satisfaction of certain prerequisite(s). Pursuant to section 363(c)(2) of the Bankruptcy Code.

> The trustee [or debtor-in-possession] may not use, sell, or lease cash collateral under paragraph 1 of this subsection, unless - (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section. 11 U.S.C. § 363(c)(2).

31. The "provisions of this section" referred to in section 363(c)(2)(B) quoted above includes section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the

> court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). That is, to the extent necessary, adequate protection is to be provided to a party with an interest in property sought to be used by a debtor to balance a debtor's required use of cash collateral and the rights of parties holding an interest in that cash collateral. The Debtors respectfully submit that the Court should order the relief requested herein under section 363(c)(2)(B) of the Bankruptcy Code given the adequate protection being provided under sections 361 and 363(e) of the Bankruptcy Code as set forth herein.

32. While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by case basis. *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Swedeland Dcv. Grp.*, Inc., 16 F.3d 552, 564 (3d Cir. 1994); *In re N.J. Affordable Homes Corp.*, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *see also In re Mosello,* 195 BR. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy § 361.01[1] at 361-66 (15th ed. 1993)) (explaining that what constitutes adequate protection is not defined, and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

33. Pursuant to section 361 of the Bankruptcy Code, a debtor may provide adequate protection by providing it with a replacement lien. A secured lender is only entitled to adequate protection up to the value of the collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *Gallegos Research Group.*, 193 B.R. at 584-85 (citing *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988)); *Cann & Saul Steel Co.*, 76 B.R. 479, 483 (Bankr. E. D. Pa. 1987).

34.     Courts have consistently held that replacement liens are sufficient adequate protection. *See In re Mt. Olive Hospitality, LLC*, 2014 WL 1309953, at *3, n. 6 (D.N.J. March 31, 2014).

35.     The Debtor respectfully submits that the protections proposed herein are appropriate to adequately protect the Bank's interests.

*Authorization to Obtain Post-petition Financing*

36.     Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its sound business judgment in obtaining secured or superpriority financing pursuant to section 364 of the Bankruptcy Code. *See, e.g.*, *Trans World Airlines, Inc. v. Travellers Intl AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment."); *In re Barbara K. Enters., Inc.*, Case No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a Debtors' business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[c]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a Debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, inter alia, an exercise of "sound and reasonable business judgment."); *see also Bray v. Shenandoah Fed. Say. & Loan Assoc.*

*(In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that "[t]he statute imposes no duty to seek from every possible lender before concluding that such credit is unavailable").

37. Specifically, to determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting that courts should not second guess a Debtors' business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the Debtors'] authority under the [Bankruptcy] Code.") (citation omitted).

38. Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) of the Bankruptcy Code authorized, after notice and a hearing, upon showing that unsecured credit unobtainable); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *Ames*, 115 B.R. at 37-39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

39. The Debtor's request to obtain post-petition financing is an exercise of its sound business judgment that warrants approval by the Court. Prior to the Petition Date, the Debtors and their legal and financial advisors undertook an analysis of the Debtors' projected financing needs.

40. In order to maximize the value of the Debtor's estate, the Debtor must secure a sale of its operations as a going-concern.

41. Its failure to continue operating, including taking on new clients and purchase orders, will result in a significant diminution of its reputation, and its ability to secure new work.

42. Based on the advice of its counsel and professionals, and after a series of arms-length negotiations with Yorktel, the Debtor has determined that the Purchase Agreement with Yorktel is in the best interests of the estate, and will result in a greater return on the proposed sale to York-VCA, or any successful bidder.

## WAIVER OF MEMORANDUM OF LAW

43. Because the legal basis upon which the Debtor relies is incorporated herein and the Motion does not raise any novel issues of law, the Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3).

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

44. The Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and a waiver of any stay of the order proposed herein, including under Bankruptcy Rules 4001(a)(3) and 6004(h).

## NOTICE

45. *In accordance with Section 363(c)(3), the Debtor hereby requests that this Court conduct an interim hearing authorizing the Debtor's use of cash collateral, and schedule a second interim hearing within fourteen (14) days, as permitted by F.R.B.P. 4001, at which time any objections, if any, to the Debtor's continued use of cash collateral or use of post-petition financing can be heard*.

46. By separate application filed simultaneously herewith, the Debtor has requested that the Court shorten the notice period and grant an expedited interim hearing on this Motion and other "first day motions" so that the Debtor has sufficient funds to continue operations. Pursuant to Bankruptcy Rules 4001(b)(2), the Debtors request that the Court set a date for the second interim hearing that is as soon as practicable, and fix the time and date prior to the second hearing for parties to file objections to the Motion.

47. The Debtor seeks the requested interim relief and proposes to serve the Debtor's twenty (20) largest creditors; the Office of the United States Trustee, the New Jersey and Federal Tax Authorities and counsel to the Debtor's pre-petition secured creditor and all parties who have filed a Notice of Appearance. The Debtor respectfully submits that such service will constitute good and sufficient service.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order authorizing the Debtor's interim use of cash collateral pursuant to Sections 363 of the Bankruptcy Code and F.R.B.P. 4001, and scheduling a further interim hearing, and to grant such other and further relief as this Court may deem just and proper.

Respectfully yours,

**WASSERMAN, JURISTA & STOLZ, PC**
*Proposed Counsel to Debtor-in-Possession*

By:     */s/  Donald W. Clarke*                .
           **DONALD W. CLARKE**
           110 Allen Road, Suite 304
           Basking Ridge, New Jersey 07920
           Tel: (973) 467-2700
           Direct Dial: (973) 346-7608
           Fax: (973) 467-8126
           Email: dclarke@wjslaw.com